Mr. Anderson, whenever you're ready. I'm ready, Your Honor. May it please the Court, I'm Kimball Anderson. I represent the Appellant, Mr. Trudeau. And, as you know, this appeal involves, I think, an interesting question of statutory construction, namely whether the Tucker Act affords jurisdiction over Mr. Trudeau's breach of contract claim against the FTC, a contract that arose in the context of a civil case. And I'd like to just highlight a couple of key jurisdictional facts and then talk about that statutory construction issue. The jurisdictional facts are as follows. The FTC sued Mr. Trudeau for false advertising in the United States District Court for the District of Illinois. Ultimately, the case was not tried. There was a settlement agreement reached. No claims or defenses were tried to verdict. And the parties entered into a settlement agreement that was then incorporated into a stipulated order that the District Court entered. And in the settlement agreement, the government surrendered its claims, and Mr. Trudeau, in exchange, agreed to refrain from certain marking activities. And here's the key provision in the settlement agreement that's at issue in the case. An essential bargain for provision in the agreement was a written undertaking, an understanding, quote, that there have been no findings or admissions of wrongdoing or liability by the defendants, end quote. That was the bargain for covenant. And as we allege in the complaint- There was also a bargain for covenant by whom? By Mr. Trudeau, wasn't it? It was. It was a bargain for essential consideration for the settlement agreement. It was a bargain for by Mr. Trudeau and agreed to by the government. And so where's the promise- where's the unmistakable promise to subject- which would have subjected the United States to monetary liability in the event of the breach of that order? Well, that judicial gloss has its origin in the Kenya case, as you know, a case in rising- Well, why don't you answer my question first, and then you can tell me why it's not relevant. But there is- can you point to a promise to subject the government to monetary liability? Yes. You can point to it. Well, I can do this. I can do this. It's settled that in every contract there is an implied covenant of good faith and fair dealing that says that a party to a contract cannot undertake an action that defeats the essential consideration, robs the other party of an agreed-upon element of the contract. You cannot defeat the purpose of the contract, defeat an essential consideration. That is an implied promise, an implied undertaking that the government made here. Now, the second part of your question is, is there something that says, you know, we authorize the government to spend money on this? Again, I would say yes. All five commissioners of the FTC voted to approve this settlement. They authorized the expenditure of funds on the case. They authorized these attorneys to enter into the agreement. So there is an implied approval by the entire commission to settle this case on these terms with this undertaking, an undertaking that as a matter of law says that the party cannot rob the other of an essential consideration. You're in essence saying you think that the five commissioners sat up there and said to themselves, when we enter into this, we are making an unmistakable promise to subject the United States to monetary liability in the event of breach. I think that that is certainly a fair implication. I would also – That's a reach. Well, I would also say – I mean, that's a – your arm is broken. That's such a long reach. Well, I would also say that as a matter of statutory construction, there is nothing in the statute or the legislative history that allows that kind of judicial gloss to be laid onto a breach of contract claim arising out of a civil case. That gloss has its origin in the Kenya case, which is a criminal case, and it has never been expanded to apply to a breach of a civil case. Never. And that's the expansion that the government is asking here, and we suggest respectfully that it has no support in the plain language of the statute or in the legislative history. Is this truly a civil case in and of itself? I think it truly is a civil case. It was brought as a civil case. It was not brought as a criminal case. It was brought as basically a false advertising case. And by the way, it's the same type of activity that private citizens and private corporations engage in every day. There are lawsuits in our district courts alleging false advertising. Those lawsuits arise under the Lanham Act, under state fair trade acts. So this is an activity that is engaged by our public citizenry every day. And so my answer to your question is a short yes. But they are acting on their own private behalf under those particular sections. They're trying to enforce a particular private act. Here the FTC is enforcing a public act. The FTC action cannot be enforced by a private individual. You'll agree with that. There's no implied right for a private cause of action under Title V of the FTC Act. You're absolutely right. Now, what happens where the government enforces the action for the benefit of the public? Is that really a private action or is that a public action? Well, we have some considerable guidance on that subject for the United States Supreme Court in the Winstar cases. You may be familiar with the Winstar cases. I'm reasonably familiar with Winstar. Breach of contract case. Acquiring S&Ls sued the government for reneging on a promise to afford them accounting treatment, how they would treat supervisory goodwill. That case came up through this court first and then to the United States Supreme Court. And significantly, it was a breach of contract. Civil case. Neither this court nor the U.S. Supreme Court found any gaping problem with jurisdiction under the Tucker Act, none whatsoever. And as to your point, which is, is this proprietary conduct or sovereign capacity conduct, there the United States Supreme Court in the plurality decision characterized the government's conduct there of allowing this treatment of supervisory goodwill, special accounting. They characterize that as proprietary, not as sovereign. Do we have to follow a priority decision by the Supreme Court when there's no majority? Is that really what establishes the law for us? No, but you asked a question and I'm trying to respond to it by what judicial guidance is there that teaches us what's proprietary versus sovereign. And I'm going to back up here again and say that that distinction, too, has its roots in that Kenya case, which is a criminal case. It's never been applied in a civil context when this court most recently visited that issue in Sanders. Sanders court did not apply any sovereign versus propriety. It made the civil versus criminal distinctions. But anyway, I want to answer your question because you asked how do we characterize this conduct by the government in the Trudeau versus FTC case? And we have guidance. Plurality of the Supreme Court said what the government said. Well, but you, in all fairness, sir, you have to take Winstar in the full setting that it comes in. As you're no doubt aware, in the Winstar whole line of cases that involve the old FISLIC and FLUBS involved, they were up to their elbows in commerce. They'd stepped off the throne and they were engaging in writing contracts where they were supplying, the government was supplying monetary aid to these institutions. It was a truly commercial undertaking that the government was engaging in with these parties. That can't be the same said when the FTC is bringing an enforcement action under the false advertising act. I mean, the settings are entirely different. I disagree. In both situations, the government is trying to protect the public interest. In both cases, they're protecting the public interest. In both instances, they're really doing something that only they have unique standing to do, the government. Only the government can establish and enforce the accounting rules for S&Ls. That's really no different here, and that's the whole problem, I think, that subsequent courts have seen with this sovereign capacity jurisdiction. It's really kind of in the eye of the beholder. And I've kind of characterized it like Harry Potter's invisibility cloak. The government screws up. The lawyers say, oops, you can't see us. Now it's in our sovereign capacity. Well, the fact of the matter is that doctrine has its historical roots only in judicial gloss and only in the criminal context. Why shouldn't the U.S. district court that accepted and entered the settlement agreement between your client and the FTC and retain jurisdiction over the circumstances, why shouldn't you be there? Why shouldn't the U.S. district court be deciding whether there is a contract or a breach of the contract? Good question. Simple answer, and that is the district court can only retain jurisdiction that it has. The Little Tucker Act specifically instructs the district courts that they have no jurisdiction in any dollar money damage claims against the United States over $10,000. The Tucker Act complements the Little Tucker Act, and the Tucker Act says that if there are money damage claims against the United States government, those cases must be exclusively filed in the federal court of claims. And so I think it is a very fair conclusion to say that this district court, to the extent that it was retaining jurisdiction to enforce the injunctive provisions of the settlement agreement, could not have retained any jurisdiction that it did not have because the Little Tucker Act and the Tucker Act clearly put it elsewhere. And we also can see that happening in the Sanders case. You may remember what happened in the lower court in the Sanders case. Let me ask you about that point. In the district court, if it were a case between two private parties, then clearly the court would have jurisdiction to supervise a breach of the stipulated order, correct? Sure. But the government is one of the parties that automatically – do the parties have a choice? Did your client have a choice? Could he have gone to the district court, not requesting monetary relief but an injunction perhaps or some other relief, and gone to the district court? But if he decides to go for money, then he's got to go to the court of claims? Yes, that's what the Little Tucker Act and the Tucker Act expressly say. They strip the district courts of jurisdiction for money damage claims against the government when you're seeking more than $10,000. If your client was only seeking injunctive relief, he could have gone to the district court. Pardon? If your client was only seeking injunctive relief, he wants the FTC to issue another press release saying we're sorry and to the extent that we maybe suggested that Mr. Trudeau engage this conduct, we didn't. We're very, very sorry, and they publish it in every newspaper in the country. I haven't researched that issue, but I think it's correct. I think what turns it is a money damage claim. And I want to revert to my point about the Sanders case because that gives us a concrete example of what happens. In the Sanders case, there was a settlement agreement at the district court level, the United States District Court, and then one of the parties involved the government, and the private party then brought a money damage claim against the government arising out of an alleged breach of that settlement agreement, and the government and the district court then transferred the case to the Court of Federal Claims, citing the Tucker Act. So you get involved in what some of the courts have described as kind of governmental jurisdiction. If I can come back for a moment to the language in Sanders where the holding is that the liability can only exist if there's an unmistakable promise subject to the United States. You're saying to me that that's wrong. I'm saying two things. First of all, that originates in Kenya and has only been applied in criminal context, and I'm saying you don't have to overrule Kenya, but for Pete's sakes, don't expand that judicial gloss to the civil case. Assume for purposes of argument that I disagree with you and that I think Kenya didn't foreclose the application of its doctrine in the gross, if you will, in a civil setting. I mean, if we agree with you that Kenya has no life outside the criminal setting, game's over, you win, I would think. So if we cross that threshold and leave you behind and say, no, we think it can't apply in a civil case, and then I turn to the language in Sanders and I say, but here I disagree with you, I don't think the five commissioners meant to burden the United States with a monetary relief here, then I think I've got to follow Sanders because it's the law of our circuit. It could be wrong. It could lead to a petition for rehearing in bank when you tell me that Sanders was wrong. But I'm bound by a previous panel holding. But Sanders was clearly construing Kenya's ruling in the context of a criminal case. Sanders was not extrapolating that to civil cases. I understand that, but I'm saying if I disagree with you on the civil-criminal distinction and I say, I believe that there's nothing in Kenya or Sanders that precludes, as I said, application of the doctrine sort of in the gross, whatever the doctrine is, then I'm going to say to you, okay, once I've made that decision, I think I have to hive onto that, the holding, and I hive onto the holding in Sanders. I think your objection to me then is that Sanders made a mistake. I don't think Sanders made a mistake. Well, you made a notion of the substance. You made a notion of the substance. I think you said there's no way that the Tucker Act can properly be construed to permit such a gloss. I thought those were your words. Yeah, and I base that on the literal language. The language says the court of federal claims shall have jurisdiction to render judgment upon any claim. I'm talking now about the power issue. Okay. If there was a four-square precedent in my court that I thought was wrong, I have to follow it. I could write an opinion saying I'm following this deadhead wrong opinion, but I have to follow it until it's overruled and banned. Yes, you do, but Sanders is not such a decision. Sanders does not expand that judicial gloss to civil cases. It just doesn't do that. It takes care, first of all, not to rely on sovereign. No, I agree with you that Sanders doesn't say on its face this gloss applies to civil settings as well as Sanders' setting, which is a criminal setting. But this panel has the duty now to decide whether your lead argument is correct, which is to say whatever that Kenia stuff is, it only applies in a criminal setting next case. Yes. And if, as I say, if we leave you behind there, if we say no, we think it's prudent to have some restriction on Tucker Act jurisdiction in a civil setting, then it would seem to me that I can't really find a way around the language in Sanders that you feel is an improper interpretation of the statute. OK, well, I would say the following. You'd have to find it prudent without any guidance from the plain language of the statute or its legislative history. And second of all, you can find an implied undertaking by the government here because the statute talks about express and implied contracts. OK, any claim arising out of an express or implied contract, and as I've tried to make clear, there is an implied undertaking by any party to a contract not to defeat an essential bargain for consideration. And that is what the government did here. The commissioners all voted in favor. Clearly, the commissioners had appropriated funds to spend to prosecute the lawsuit. Mr. Anderson, there was no indication in the agreement that there was a specific amount set aside in case of breach. This brings us right back to the first question that Judge Prost asked. Where in a specific order was there a monetary damage specifically authorized? There isn't, but the statute doesn't require it. In fact, the statute even talks, expressly talks in the statute about awarding unliquidated damages against the government. So how could that be a requirement of the statute that you have to have a liquidated damage clause? Look at Section 1346A2. It contemplates an award of unliquidated damages against the government. How could you possibly layer on a judicial requirement of having a liquidated damage clause required in the face of that express statutory language? Thank you, Mr. Anderson. May I ask just one question? Mr. Anderson, in the district court case, and I'm referring to 384 FEDSUP 2nd at 296, the district court says, seems to me it makes a fact finding that the differences between the press release and the stipulated order are minor or illusory and have not led to discernible injury to Mr. Trudeau. And have not led to discernible injury to Mr. Trudeau. Are you talking about the district court decision in the case below? No, I'm talking about in Trudeau against the Trade Commission, District of Columbia case. Oh, yeah. Okay. There's an argument that there's collateral estoppel here. Yes. And if there has been a finding that is essential to a judgment in another case, and the finding is that the difference between the press release and the stipulated order have not led to discernible injury to Mr. Trudeau, it would seem to me that that's a finding that he hasn't been harmed. If he hasn't been harmed, then he has no case of controversy. He has no standing, he has no beef with regard to the government in a Tucker Act cause of action because in a Tucker Act cause of action you have to demonstrate injury. Well, I would say not so fast. The collateral estoppel doctrine requires that the identical issues be decided in each case and furthermore that the findings be dispositive of the ruling in the first case. I understand that. The ruling in the first case has to be dispositive. The ruling in the first case was that that press release was not a final agency action under the Administrative Procedures Act. It was not a jurisdictional question. They didn't try any breach of contract question. The falsity or truthfulness of the press release is really a red herring. What the central issue that has yet to be tried in any case is whether the government engaged in conduct, whether truthful or false conduct, that robbed Mr. Trudeau of an essential agreed upon provision. Those issues haven't been tried. You can't say that they're identical with the district court cases. Not any of them were identical. Thank you, Mr. Anderson. All right. We'll restore a few minutes to your rebuttal time. Thank you. Mr. Simpkin. May it please the Court. There are two things that are undisputed in this case. First being that the stipulated order upon which Mr. Trudeau bases his claim contains an express provision stating that it is to be enforced in the district court that approved and entered it. Secondly, Mr. Trudeau also does not dispute that when the FTC executed the stipulated order that it was acting in its sovereign law enforcement capacity. We submit that either of these two considerations together or standing alone compel the conclusion that the trial court's judgment of dismissal should be affirmed. But doesn't the Tucker Act really waive sovereign immunity for particular agreements with the government? Well, certainly it does. So why isn't this an agreement with the government? And the government has a certain obligation to perform under that agreement. And if it breaches it and there are monetary damages due to the breach, why can't it be before the Court of Federal Claims? Because, Your Honor, as the Court of Claims established in Kenya, the contract liability that is afforded by the Tucker Act does not extend to every contract that the government enters into. It only extends to those contracts that are enforceable by way of a money damages judgment against the United States. If the contract in question does not afford such a remedy, it doesn't fall within Tucker Act jurisdiction. Even though such an agreement is enforceable, has all the other elements of an enforceable contract. But on your first point, so you're pointing to the provision which says that the district court will have jurisdiction to enforce it. But you agree that the district court, let's assume there's a monetary element, too, in the enforcement. You wouldn't concede that the government had therefore waived their right and the district court could impose monetary relief against the government in the context of enforcement, right? I'm not sure I understand Your Honor's question. In terms of the district court's ability to enforce the settlement agreement? Yes. Can they find against the government in terms of monetary relief and award monetary damages to Mr. Trudeau for a breach? Not for contract breach damages, Your Honor, because as Mr. Anderson noted, well, firstly, the district court would be enforcing the order under its retained jurisdiction from the FTCA Act suit. To the extent that it somehow could add on or Mr. Trudeau could pursue a little Tucker Act claim of some nature, that claim would be precluded by the CANIA doctrine as well because it applies to the so-called big Tucker Act or little Tucker Act. What the district court in Illinois could do is simply enforce its order. If the order, if the government has violated the order in some regard, the court can direct the government to comply with the order. Well, but if you're wrong on CANIA, I think what your adversary was saying to us when we asked, why simply, why shouldn't we just throw it back to the district court? And he said because district court can't retain jurisdiction it doesn't have. And his case, his pitched argument is a Tucker Act case, big Tucker Act case. And you would agree the district court would have no jurisdiction over a big Tucker Act case, right? Big or little Tucker Act, yes, Your Honor. Well, you say no little Tucker Act because of CANIA. Correct. Right, but I say assume you're wrong on that. But the short of the matter is that this case, if we were to agree that there's a contract here and we were to say, well, CANIA doesn't apply in a civil setting, you wouldn't put it to the district court, right? Because they can't grant the relief. Well, we would, if the court rejects the CANIA argument, it still is nevertheless the case that the alleged contract contains provision noting that it is to be enforced in a certain court under that court's jurisdiction. In such a case, that contract is not a contract that would be enforceable by way of an award of money damages. So we would still maintain that the provision in the stipulated order is an independent basis to deny jurisdiction here. And sort of a waiver. No, what would you say that? It's a... That they waive their ability to pursue whatever avenue, whatever monetary relief they could have sought in court of claims. I suppose it could be characterized as a waiver, but I would think in a more real characterization, it's simply parties to any contract can agree on any form of enforcement or remedy. The panel had asked the Appellant's Counsel about WinSTAR and certain statements in standards about how a damages remedy is a default remedy under any contract breach. That, of course, is true, but it's only the general rule. It's the default rule. The restatement, which is what the court in WinSTAR and this court in Sanders cited to in that very section, explains that parties to any contract can modify that rule upon any terms that they agree to. And so cases like KANIA and cases in that line, the central holding is that although there is an agreement with the United States, and although that agreement is enforceable in some manner, it is not the type of agreement by which the government has agreed to have its obligations enforced by way of... Right, right, but you're trying to convince us that the two parties that negotiated the settlement agreement both agreed that KANIA applied to the circumstances. I mean, the other side is being dragged to the KANIA with kicking its feet, saying, look, it doesn't even apply in a civil setting, that we signed this settlement contract with the government, and the bargain for fact was our client had been accused of serious wrongdoing, very bad for the reputation, etc. And so our client's willing to settle, maybe even pay some money, provided that there are no findings, that there's no stain on the reputation of the client. And their position is the press release contravened that pledge of neutrality, if you will. And if it's in a purely civil setting, then why wouldn't the default kick in? Ordinarily, you think of, what's the remedy for defamation of character? For slander, reliable money, right? It's what people mostly want. They like a retraction. New York Times runs a retraction saying, we're sorry, we smeared you, but usually the check comes in the mail. So my question to you is, why necessarily should KANIA have and Sanders have legs in a civil setting? Because the ultimate rationale that those decisions rest upon apply irrespective of criminal or civil type context. In fact, as we pointed out in our brief, the rationale relied upon by the Court of Claims in KANIA was extended back to cases that involved federal employment disputes, military and civilian pay cases. The court explained that even though that type of setting certainly can be viewed in a vacuum as a contractual one, an employment contract, nevertheless, the court had long held that those types of arrangements, which are completely civil, do not fall within the TACRX contract jurisdiction. And the reason is because the backdrop against which the government hires its employees is one that doesn't speak to contracts or contract obligations at all. In other words, it's an entirely statutory relationship based upon appointment. And because of that backdrop, that implicates upon plaintiff's behalf the need to provide a specific provision that states the government is agreeing to contract breach damages. And so the KANIA decision itself shows that it doesn't apply only in a sort of criminal context. In fact, one of the cases cited by the appellant in his brief, Blomkirby, United States, was a decision of the Court of Federal Claims where they applied the KANIA rule in a civil case where the plaintiff, unlike Mr. KANIA, who was a criminal defendant, the plaintiff in that case was a federal civilian employee of a drug enforcement agency who was prosecuted for actions within the context of his employment. And he argued that as a part of his employment contract, he had an agreement with the United States to be reimbursed for the costs of defending that suit. And the Court of Claims, citing KANIA, simply held that employment disputes, even though they are civil and even though this plaintiff is a civilian employee, don't fall within the TACRX waiver of sovereign immunity. Mr. Simpkin, you have to admit that that language in the Tucker Act is pretty broad. It would cover any agreement between a party and a federal government, would it not? It's broad, Your Honor. And, of course, it doesn't say anything about exceptions for criminal-related contracts. It doesn't provide any exception for contracts implied in law, for example. It doesn't provide any exception for contracts with so-called non-appropriated fund instrumentalities. On the other category, the Tucker Act… It also doesn't say anything about the need for an unmistakable promise to subject the United States to monetary liability, either, does it? It doesn't say those words. And in the other categories that are founded upon claims involving statutes, regulations, constitutional provisions, there's no qualification for those categories either. But, of course, this Court and its predecessors for decades have held that such claims must be predicated on a money-mandating source of law. And that, Mr. Anderson might view as a gloss, but it is an aspect of this Court's jurisprudence and reflects the long history of the Tucker Act. Well, the Tucker Act in and of itself is just a waiver of sovereign immunity. It's not money-mandating by itself. You need a second part to it. Correct. And what Mr. Anderson is saying is there's an implied money-mandating aspect to the agreement which was entered into by Mr. Trudeau and the FTC. Now, if, in fact, the amount of damages was less than $10,000, would the district court be able to take jurisdiction under the Tucker Act? Again, no, based upon our Acani argument. Why not? Because the Little Tucker Act has the same language about claims founded upon express implied contracts. Well, why can't it be an implied contract as part of the order, the settlement agreement? Isn't that an implied contract that if you breach the contract, there would be some monetary damages? Well, there's nothing implied here because the contract Mr. Trudeau is asserting is an express written provision. We have assumed for argument's sake that it is a contract, but we haven't conceded that point. But if it is a contract, it is an express agreement that is embodied in the terms of the judge's stipulated order. So the four corners of the contract require us to avoid any implication of monetary damages that could be assumed under the breach of the agreement. Correct, Your Honor. There has to be an express statement in there that subjects the U.S. to that liability. So that could be negotiated by the parties in the future if necessary? In theory. In theory, if plaintiffs or defendants in this position want to ensure a certain type of treatment, they can attempt to negotiate an actual settlement agreement with the government agency involved and then do something with the court proceeding. Here, nothing like that occurred. It's not the FTC's practice to settle cases in that manner. What the parties did here was negotiate the terms of a proposed stipulated order, which each party stipulated they would agree to the entry upon those terms to the district court. Now, if the district court did not for any reason accept the order or enter it or approve it and sign it, there would be no settlement. There would be no settlement agreement. Now, when the FTC enforces part of its statute, it's acting on behalf of the public. Is this anything that would say that unless the federal government specifically waives its sovereign immunity for enforcement, it would not be subject to contractual liability for monetary damages? No, the teaching of Canning is that these types of law enforcement actions can be contracted with an integrity, but the contract just must spell that out in terms of the availability of breach damages, and, of course, that promise must be made by someone with authority. So we can't classify this as a hybrid type of an enforcement action by the FTC which protects the public interest? I'm sorry, I didn't understand that. We can't classify this as a noncontract that's only an order which protects the public interest? Well, I think we can characterize the stipulated order as simply an embodiment of the law enforcement authority possessed by the FTC. It is not contractual in nature. It doesn't contain any promissory language. It's not a Tucker Act enforceable contract is what you're saying. You said earlier that given the existence of CANIA and its progeny, the law recognizes that there can be contracts between the sovereign and a private party, but the relief for breach of the contract simply doesn't lie under the Tucker Act. That's correct, Your Honor, and the key is that the availability of monetary damages is not there. And this case is an easier case, really, than CANIA. CANIA was a oral contract, an alleged oral contract, and the court was therefore constrained to look to the circumstances in which it was created. It looked to the fact that it came from another forum that had a jurisdiction dedicated to it by Congress. I see my time is up, so unless there are further questions. Finish your thought. Any other questions? No questions. Thank you, Mr. Simpkin. Thank you. Mr. Anderson? Thank you. We'll restore three minutes of your rebuttal time. All right, I just have a few comments. As to this issue that we were just discussing as to whether this decree, this settlement agreement is a contract within the meaning of the Tucker Act, that issue is settled, and it's been settled in numerous cases, most recently by this court in Sanders. You may recall in Sanders the parties reached a settlement agreement. It was then approved in a stipulated order, and here's what the Sanders court held. The court approved stipulated order here may be fairly characterized as a, quote, express or implied in fact, end quote, contract. There was no term in this settlement agreement your client entered that allowed your client to back out? I mean, they signed something, right, in the FTC office, and then they waltzed down to the district court in Illinois to submit the deal, right? Yeah. Could your client have changed his mind in the cab on the way down and say, I don't want to settle? Well, it's true, but my experience tells me no. Once the parties reach a meeting of the minds, an agreement, even an oral agreement, even oral agreements are enforceable in Illinois and under the federal system, and the district courts, in my experience, will enforce oral settlement agreements. So I don't really think that was an option. So I think this issue of whether this settlement agreement is a contract within the meaning of Tucker Act, that, in all honesty, that's been settled in the fact that it got incorporated in a so-ordered or so-stipulated court decree doesn't take it outside of the Tucker Act. And I also want to disagree with something else Mr. Simpkins said. He said parties can agree on any means of enforcement, and here they agreed that the district court would enforce this agreement. But I don't think that's true. Certainly parties cannot confer in a contract. They can't confer jurisdiction on the district court that the district court does not have. And we've been over this point about what the little Tucker Act says and the big Tucker Act says. I mean, Mr. Trudeau and the FTC lawyers could agree all they want that the district court would have jurisdiction over a money damage claim, but that doesn't make it happen. The district court would read the act and say, I can't hear this. No, the suggestion, as I understood it, and maybe I'm wrong, was that in so doing your side conceded or agreed, there was an agreement that the government was not subject to monetary liability in the event of a breach. We may not agree with that. That's a huge leap. That's a huge leap. I mean, first of all, any kind of waiver under settled contract rules would require intent and express undertaking. You're not going to infer a waiver from that. That would be unprecedented. So I think that would be just a huge leap. What I think the parties fairly assume is that the government attorneys would conduct themselves professionally and that the government would not run out the door and rob Mr. Trudeau of an essential bargain for consideration. You don't expect your opponents to do that, but that is exactly what happened. The government chose not to prove up its liability. It chose not to get a court finding, but then went to the world on their Internet site and effectively announced that there had been a finding of wrongdoing, and that was a breach of the contract. Thank you, Mr. Anderson. Thank you. The case is submitted.